IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CEDRIC L. FACISON,                  §
                                    §
     Plaintiff,                     §
                                    §
v.                                  §     CIVIL ACTION NO. H-12-2909
                                    §
BP TEXAS CITY CHEMICAL d/b/a        §
BP, INC.,                           §
                                    §
     Defendant.                     §

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] are Defendant's Motion for Summary Judgment (Doc. 14) and Plaintiff's Motion to Postpone Consideration of Defendant's Motion for Summary Judgment (Doc. 20). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED** and **DENIES** Plaintiff's motion.

## I.  Case Background

Plaintiff Cedric Facison filed this employment action against his former employer, BP Amoco Chemical Company ("BP"),[2] alleging discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),[3] the Texas Commission on Human

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 29.

[2]     Defendant noted that it had been incorrectly named in Plaintiff's pleading. Doc. 14, Def.'s Mot. for Summ. J. p. 1.

[3]     42 U.S.C. §§ 2000e–2000e-17.

Rights Act (TCHRA), and 42 U.S.C. § 1981.[4]

## A.  **Factual Background**

Plaintiff, an African-American male, began his employment with Defendant as a Unit Maintenance Manager at a chemical plant in Texas City in August 2011.[5]  Plaintiff's responsibilities included providing technical support to the operating units and maintenance craftsmen, addressing short-term reliability problems, performing root-cause failure analysis, and providing turnaround support.[6] The decision to hire Plaintiff was made by Rodney Colletti ("Colletti"), a Maintenance and Engineering Manager who then served as Plaintiff's manager for the duration of Plaintiff's employment with Defendant.[7]

In February 2012, Defendant hired Kevin Ashby ("Ashby") as a Maintenance Engineering Team Lead.[8]  Ashby became Plaintiff's direct supervisor.[9]  Ashby raised several concerns with Plaintiff regarding the quality of his work, including that he was not

---

[4]     Because these three statutory bases are functionally identical for the purposes of Plaintiff's claims, the court shall hereinafter refer only to Title VII.  See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 402 n.2 (5th Cir. 1999) ("When used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability.  Similarly, the law governing claims under the TCHRA and Title VII is identical." (citations omitted)).

[5]     See Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. p. 8.

[6]     See Doc. 14-1, Ex. B to Def.'s Mot. for Summ. J., Aff. of Rodney Colletti ("Colletti") p. 1.

[7]     See id. pp. 1-2.

[8]     See id. p. 2.

[9]     See id.

completing his work on time, that he was spending excessive amounts of time using his computer for personal reasons, and that he was failing to proofread documents for grammatical and spelling errors.[10]

On the afternoon of April 17, 2012, Plaintiff left work to attend a conference.[11]   Plaintiff testified that he had made arrangements to attend the conference with the approval of a prior supervisor, but did not inform Ashby that he planned to attend.[12] During the conference, Ashby confronted Plaintiff and asked him to return to work at the chemical plant.[13]   According to Defendant, Plaintiff had also left work on March 26, 2012 without giving prior notice to Ashby.[14]

Colletti testified, and Plaintiff does not dispute, that in April 2012 Plaintiff met with Colletti to discuss Plaintiff's desire to transfer to a rotating engineering role.[15]   Colletti testified that he declined the request and reminded Plaintiff that

---

[10]    See Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 71-75.

[11]    See id. pp. 80-81.

[12]    See id. pp. 80-82.

[13]    See id. p. 82.

[14]    See Doc. 14-1, Ex. A-10 to Def.'s Mot. for Summ. J., Performance Improvement Plan p. 1.

[15]    See Doc. 14-1, Ex. B to Def.'s Mot. for Summ. J., Aff. of Colletti p. 2.

Defendant's offer of employment stated that Plaintiff would be "expected to remain in [his] [initial] role for at least 3 years before posting for new roles within BP."[16]  According to Plaintiff, this was contrary to assurances made by Colletti before Plaintiff was hired that he would be "authorized to post for or seek" a rotating engineer position.[17]

Subsequently, in April or May 2012, Plaintiff submitted an application for an open position with Defendant as a rotating equipment engineer.[18]  Plaintiff represented on the application that he had been in his position for at least two years and that he had received permission from his current supervisor to apply for the position, pre-requisites for submitting the application.[19]  In fact, Plaintiff had been a Unit Maintenance Manager for approximately nine months and had not received permission from a supervisor to apply for the job.[20]

On May 30, 2012, Colletti placed Plaintiff on Decision Making

---

[16]    See id.; Doc. 14-1, Ex. A-5 to Def.'s Mot. for Summ. J., Offer of Employment p. 1.

[17]    See Doc. 21, Aff. of Pl. p. 2.

[18]    See Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. p. 14 (stating that Plaintiff applied for the position in April 2012); Doc. 14-1, Ex. B to Def.'s Mot. for Summ. J., Aff. of Colletti p. 2 (stating that Plaintiff applied for the position on or about May 22, 2012).

[19]    See Doc. 14-1, Ex. B to Def.'s Mot. for Summ. J., Aff. of Colletti p. 2; Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 86-88; Doc. 14-1, Ex. A-1 to Def.'s Mot. for Summ. J., Admissions No. 37.

[20]    See Doc. 14-1, Ex. B to Def.'s Mot. for Summ. J., Aff. of Colletti p. 2; Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 86-88.

Leave ("DML") for "insubordination," specifically, for having "posted for a position . . . after receiving specific instructions from [Colletti] that [he] did not have approval."[21]   Plaintiff refused to acknowledge receipt of the letter setting forth the DML, stating that he wanted to change its wording.[22]   Plaintiff was subsequently suspended from work with pay until June 13, 2012, when he returned to work and signed the DML letter.[23]

Upon his return, Plaintiff was placed on a Performance Improvement Plan ("PIP"), a formal warning regarding Plaintiff's performance.[24]   A form detailing Plaintiff's PIP provided to Plaintiff identified issues with his performance, including "[a]bsence from duty without prior notice to and permission from supervisor," "[r]epeated failure to follow instructions properly," and "[f]ailure to effectively manage time and increase productivity to meet objective target dates."[25]   The form stated that "failure to demonstrate the necessary improvement, or any other violation of BP policy, practice or the Code of Conduct, during or after this PIP, could result in disciplinary action, up to and including

---

[21]   See Doc. 14-1, Ex. A-9 to Def.'s Mot. for Summ. J., DML Letter p. 1.

[22]   See Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 90-91.

[23]   See id.

[24]   See id.; Doc. 14-1, Ex. A-10 to Def.'s Mot. for Summ. J., PIP Letter p. 1.

[25]   See Doc. 14-1, Ex. A-10 to Def.'s Mot. for Summ. J., PIP Letter pp. 1-3.

termination of [Plaintiff's] employment with BP."[26]

On July 10, 2012, Plaintiff was again suspended with pay after he accessed the email account of a suspended co-worker at that co-worker's request and left the plant without a supervisor's approval.[27]  Upon being suspended, Plaintiff was instructed not to enter BP's premises without permission.[28]  Plaintiff returned to BP's premises on August 6, 2012, obtaining a visitor's badge and reporting to BP Medical.[29]  Plaintiff had not received permission to return to BP's premises from anyone at the chemical plant and did not inform anyone at BP medical that he had been suspended.[30] Plaintiff was terminated that day.[31]  A notice of termination letter signed by Colletti stated that BP had "determined that [Plaintiff's] actions violated the terms of [his] [PIP], [his] DML letter and BP policies and Code of Conduct."[32]

## B.  Procedural Background

On September 28, 2012, Plaintiff filed this lawsuit, alleging

---

[26]    See id. p. 1.

[27]    See Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 36-39, 94; Doc. 14-1, Ex. A-1 to Def.'s Mot. for Summ. J., Admissions Nos. 55-57; See Doc. 14-1, Ex. B to Def.'s Mot. for Summ. J., Aff. of Colletti p. 4.

[28]    See Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. p. 94.

[29]    See Doc. 14-1, Ex. A-1 to Def.'s Mot. for Summ. J., Admissions Nos. 60-70.

[30]    See id.

[31]    See Doc. 14-1, Ex. A-11 to Def.'s Mot. for Summ. J., Notice of Termination.

[32]    See id.

discrimination based on race.[33]  Defendant filed the pending motion
for summary judgment on August 2, 2013.[34]  Plaintiff responded and
filed a motion to postpone consideration of Defendant's motion on
August 21, 2013, and Defendant filed a reply on August 27, 2013.[35]

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.
2003).  A material fact is a fact that is identified by applicable
substantive law as critical to the outcome of the suit.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet
Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th
Cir. 2001).  To be genuine, the dispute regarding a material fact
must be supported by evidence such that a reasonable jury could
resolve the issue in favor of either party.  Anderson, 477 U.S. at
250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th
Cir. 2002).

The movant must inform the court of the basis for the summary
judgment motion and must point to relevant excerpts from pleadings,

---

[33]     See Doc. 1, Pl.'s Orig. Compl.

[34]     See Doc. 14, Def.'s Mot. for Summ. J.

[35]     See Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J.; Doc. 28, Def.'s
Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J.

depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences,

unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

### III.  Analysis

Defendant moves for summary judgment on all of Plaintiff's claims.

### A.  Evidentiary Issues

Included in Plaintiff's summary judgment exhibits are Plaintiff's affidavit, the substantially identical affidavit of Nicholas Summerville ("Summerville"), a former BP employee, and an unsigned narrative prepared by Plaintiff dated May 30, 2012.[36] Defendant objects to this evidence as incompetent and inadmissible.

Defendant objects to Plaintiff and Summerville's affidavits on the basis that they contain unsupported assertions and legalistic arguments.  In order to serve as competent summary judgment evidence, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the

---

[36]    See Doc. 21, Aff. of Pl.; Doc. 27, Aff. of Summerville; Doc. 22, Narrative Dated May 30, 2012.

affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The sections of the affidavits specifically objected to by Defendant include assertions not based on personal knowledge, such as Plaintiff's statement that "BP terminated [his] employment pretextually for alleged insubordination in posting for the above described engineering position, but actually on account of [his] race."[37]  The court finds that this and similar statements are not competent summary judgment evidence and has not considered them.

Defendant also objects to Summerville's affidavit on the basis that it neither sets forth nor implies the basis for his claim to have personal knowledge of its contents.  Summerville states that he has personal knowledge of the events recounted "[b]ased upon [his] opportunity to observe BP's actions" and "[Plaintiff] perform the duties of his job."[38]  Portions of the affidavit recount events about which Summerville plainly could not have learned from these observations.  The court sustains Defendant's objection to the extent that Summerville's basis for his personal knowledge is not sufficiently clear or plausible.

Defendant further objects to an unsigned narrative prepared by Plaintiff on the basis that it is hearsay.  See Fed. R. Evid. § 801.  The Court agrees that this is an out-of-court statement

---

[37]    See Doc. 21, Aff. of Pl. pp. 3-4.

[38]    See Doc. 27, Aff. of Summerville pp. 2-3.

10

offered to prove the truth of the matter asserted and has not considered the narrative.

**B.    Motion for Summary Judgment**

Plaintiff alleges that Defendant discriminated against him on the basis of his race in violation of Title VII. Defendant argues that, assuming Plaintiff can establish a prima facie case of race discrimination, Plaintiff cannot establish that Defendant's reason for terminating Plaintiff was a pretext for discrimination.

**1.    Prima Facie Case**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In the absence of direct evidence, as is the case here, courts analyze discrimination claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). Under this "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case. Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

A prima facie case of race discrimination requires the plaintiff to show that he: (1) is a member of a protected class; (2) was qualified for his position; (3) suffered an adverse

employment action; and (4) was replaced by someone who is not a member of the protected class to which the plaintiff belongs or was treated less favorably than similarly situated employees of a different race.  See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2011).  In the Fifth Circuit, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007).

Defendant does not challenge Plaintiff's ability to establish a prima facie case of race discrimination arising from Plaintiff's termination, but argues that Plaintiff may not complain about other work-related decisions that are not adverse employment actions. Here, Plaintiff complains that, unlike some of his coworkers, he was required to obtain his supervisor's permission to attend the conference and that he was placed on DML and a PIP and suspended because of his race.  These are not actionable adverse employment actions.  See Benningfield v. City of Houston, 157 F.3d 369, 376 (5th Cir. 1998) (finding that refusal to allow employee to attend work conferences did not constitute adverse employment action); Turner v. Novartis Pharm. Corp., 442 Fed. Appx. 139, 141 (5th Cir. 2011) (unpublished) ("[P]lacing an employee on PIP is not an ultimate employment decision"); Breaux v. City of Garland, 205 F.3d 150, 164 (5th Cir. 2000) (holding that suspensions with pay do not

12

constitute adverse employment actions). The court, therefore, will not consider these actions in considering Plaintiff's discrimination claims. Thus, the only adverse employment action applicable to Plaintiff's claim of race discrimination is his termination.

Given that Defendant does not challenge Plaintiff's prima facie case of race discrimination, the court proceeds to the next stage of the McDonnell Douglas burden-shifting scheme.

## 2. Defendant's Legitimate, Nondiscriminatory Reasons

Once a plaintiff has established a prima facie case, the burden of production shifts to the defendant to proffer legitimate, nondiscriminatory reasons for its actions. Okoye, 245 F.3d at 513. If the defendant satisfies this burden, then the presumption of discrimination dissolves and the burden shifts back to the plaintiff. See Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

Here, Defendant asserts that it terminated Plaintiff because of his violating the terms of his DML, PIP, and suspension by returning to BP's premises without permission, as well as his "continued and repeated behavioral issues, including insubordination."[39] This assertion finds support in the record, including Plaintiff's DML letter, his PIP, his termination letter, and the testimony of Plaintiff and Colletti. Plaintiff concedes

---

[39]     See Doc. 14, Def.'s Mot. for Summ. J. p. 17.

that he returned to BP's premises without permission, contrary to instructions given to him upon his suspension.[40]   Plaintiff also testified that he left the plant to attend a conference without notifying his supervisor.[41]   Moreover, Plaintiff testified that he had accessed the email of a co-worker, in contravention of company policy.[42]   Additionally, Plaintiff was placed on DML for "[posting] for a position with the Technology Group after receiving specific instructions from [Colletti] that [Plaintiff] did not have approval."[43]   Plaintiff testified that he indeed represented that he had received permission from his current supervisor to apply when, in fact, he had not.[44]

The court finds that Defendant has thus articulated legitimate, nondiscriminatory reasons for its conduct, thereby rebutting the presumption of discrimination.   See Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir. 2001) ("The failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action."); Cervantez v. KMGP Servs. Co., 349 Fed. Appx. 4, 9 (5th

---

[40]   See Doc. 14-1, Ex. A-1 to Def.'s Mot. for Summ. J., Admissions Nos. 60-70.

[41]   See Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 80-82.

[42]   See id. pp. 36-39.

[43]   See Doc. 14-1, Ex. A-9 to Def.'s Mot. for Summ. J., DML Letter p. 1.

[44]   See Doc. 14-1, Ex. A to Def.'s Mot. for Summ. J., Dep. of Pl. pp. 86-88.

14

Cir. 2009) (unpublished) (finding that violation of company policy constituted a legitimate, nondiscriminatory reason for terminating employee).  The court now turns to the final stage of the <u>McDonnell Douglas</u> burden-shifting scheme

### 3. <u>Pretext or Mixed-Motives</u>

Under Title VII, after the defendant proffers a legitimate, nondiscriminatory reason for its conduct, the burden shifts back to the plaintiff to produce some evidence either that "(1) the defendant's reason is not true, but is instead a prextext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." <u>Davis v. Farmers Ins. Exch.</u>, 372 F. App'x 517, 519 (5th Cir. 2010) (unpublished).

In this case, Plaintiff claims that Defendant's anticulated reasons were false.  Plaintiff, however, has not proffered any non-speculative evidence that would connect Defendant's termination decision to his charge of race discrimination.  Rather, he simply believes that race must have been a factor.  Asked at his deposition what evidence he had that Defendant terminated him because of his race, Plaintiff responded, "I don't have any answer to that at this time."[45]  There is simply no evidence of race-based animus in the record.

---

[45]    <u>See</u> <u>id.</u> p. 28.

An employee's subjective belief that he was the victim of discrimination is insufficient to create an inference of discriminatory intent. <u>Lawrence v. Univ. of Tex. Med. Branch at Galveston</u>, 163 F.3d 309, 313 (5th Cir. 1999). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. <u>Brown</u>, 337 F.3d at 541; <u>Ramsey</u>, 286 F.3d at 269. In the absence of competent summary judgment evidence of pretext or mixed-motives, the court **GRANTS** summary judgment in favor of Defendant on Plaintiff's claims.

## C.   **Motion for Continuance**

Plaintiff moves for relief under Federal Rule of Civil Procedure ("Rule") 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may deny or defer considering the motion or allow time for discovery. Fed. R. Civ. P. 56(d). Plaintiff contends that "[s]ignificant and substantial discovery remains to be conducted in this action before [he] can effectively respond" to Defendant's motion.[46]

For a party to mandate relief under Rule 56(d), the party must show "both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the

---

[46]   <u>See</u> Doc. 21, Aff. of Pl. p. 1.

party to present such evidence." <u>Access Telecom, Inc. v. MCI</u> <u>Telecomm. Corp.</u>, 197 F.3d 694, 719 (5th Cir. 1999). Additionally, the movant must have exercised due diligence in discovery. <u>See</u> <u>Baker v. Am. Airlines, Inc.</u>, 430 F.3d 750, 756 (5th Cir. 2005).

Plaintiff has not filed a motion to compel to bring any issues regarding discovery to the attention of the court. In fact, Plaintiff does not dispute Defendant's claim that he served no written discovery requests and took no depositions from the time he filed this lawsuit on September 4, 2012, until moving for a continuance on August 21, 2013.[47] Plaintiff notes that the court set a discovery deadline of October 18, 2013.[48] However, "Rule 56 does not require that *any* discovery take place before summary judgment can be granted. As a result, in a motion to extend the time to respond to a motion for summary judgment, the simple claim that discovery has not closed is insufficient." <u>Id.</u> (internal quotations marks and citation omitted). Because Plaintiff has failed to demonstrate that he exercised due diligence in pursuing recovery, he cannot prevail in his motion for a Rule 56(d) continuance.

Moreover, Plaintiff has failed to demonstrate that additional discovery would aid in his opposition. Plaintiff states that he intends to take the deposition of Defendant's designated corporate

---

[47]   <u>See</u> Doc. 28, Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 3.

[48]   <u>See</u> Doc. 12, Docket Control Order Dated Feb. 1, 2013.

representative "in order to address . . . whether [Plaintiff] was authorized to post for or seek" the rotating engineer position.[49] Any potential discovery concerns the events underlying Plaintiff's being placed on DML, which is not an actionable adverse employment action.  Even if Plaintiff were able to demonstrate that he was so authorized, Defendant has articulated several legitimate, nondiscriminatory reasons for Plaintiff's termination that Plaintiff does not dispute.  Therefore, discovery regarding Plaintiff's authority to apply for the rotating engineer position would not create a fact issue to preclude summary judgment. Accordingly, Plaintiff's motion for a Rule 56(d) continuance is **DENIED**.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED** and **DENIES** Plaintiff's Motion to Postpone Consideration of Defendant's Motion for Summary Judgment.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual

---

[49]     See Doc. 20, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 3.

findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.   Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this <u>15th</u> day of January, 2014.

Nancy K. Johnson
United States Magistrate Judge